1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4

5    ------------------------------x

6    IN THE MATTER OF:

7    JUDITH R. MANDUJANO              CASE NO. 17-23716-SHL
                                      CHAPTER 11
8                    DEBTOR.
9    ------------------------------x

10

11                 United States Bankruptcy Court

12                 300 Quarropas Street

13                 White Plains, NY  10601

14

15                 TUESDAY, MARCH 5, 2024

16                 10:40 A.M.

17

18

19   B E F O R E:

20   HON. SEAN H. LANE

21   U.S. BANKRUPTCY JUDGE

22

23   ECRO: Courtroom Personnel

24

25

1  JUDITH MANDUJANO, DEBTOR - 17-23716-SHL:

2                    C A L E N D A R

3  CASE MANAGEMENT STATUS CONFERENCE

4

5  DOC. #160 (Presentment With Objection) Motion to Approve

6  Insurance Settlement

7

8  Doc. #162 (Presentment With Objection) Objection To Motion To

9  Approve Insurance Settlement Filed on Behalf of SN Servicing

10 Corp.

11

12 Doc. #176 Motion to Sell Property Free and Clear of Liens

13 Under Section 363(f) For the Property Located at 40 Underhill

14 Place, West Harrison, New York 10604

15

16 Doc. #187 Motion to Void Lien/Motion to Void Junior Mortgage

17 Lien Held by RRA CP Opportunity Trust I Against the Debtor's

18 Investment Property Located At 186 W. Street, White Plains,

19 NY 10605

20

21 Doc. #201 Motion for Relief From the Automatic Stay Re: The

22 Bank of New York Mellon: 40 Underhill Place, West Harrison,

23 NY 10604

24

25

1    A P P E A R A N C E S :

2

3    CUSHNER & ASSOCIATES, P.C.

4         Attorneys for Judith Mandujano, Debtor

5         399 Knollwood Road, Suite 205

6         White Plains, NY  10603

7    BY:  TODD S. CUSHNER, ESQ.

8

9    FRIEDMAN VARTOLO, LLP

10        Attorneys for SN Servicing Corporation

11        1325 Franklin Avenue, Suite 230

12        Garden City, NY  11530

13   BY:  MICHAEL LAWRENCE CAREY, ESQ.

14

15   ROBERTSON, ANSCHULTZ, SCHNEID, CRANE & PARTNERS, PLLC

16        Attorneys for The Bank of New York Mellon

17        900 Merchants Concourse, Suite 310

18        Westbury, NY  11590

19   BY:  RAQUEL FELIX, ESQ.

20

21   DEPARTMENT OF JUSTICE, U.S. TRUSTEE

22        Attorney for the U.S. Trustee's Office

23        One Bowling Green

24        New York, NY 10004

25   BY:  GREG M. ZIPES, ESQ.

P R O C E E D I N G S

1

2       THE COURT:  All right.  The next case is <u>Judith</u>

3  <u>Mandujano</u>, a Chapter 11 case.  So let me get appearances

4  starting with debtor's counsel.

5       MR. CUSHNER:  Good morning, Your Honor.  It's Todd

6  Cushner, Cushner & Associates, for the debtor, Judith

7  Mandujano.

8       THE COURT:  All right.  Good morning.

9       On behalf of SN Servicing?

10      MR. CAREY:  Good morning, Your Honor.  Michael

11  Carey of the law firm Friedman Vartolo on behalf of SN

12  Servicing Corporation.

13      THE COURT:  All right.  Good morning.

14      On behalf of the Bank of New York Mellon?

15      MS. FELIX:  Good morning, Your Honor.  Raquel

16  Felix, Robertson, Anschultz, Schneid, Crane & Partners, on

17  behalf of Bank of New York Mellon.

18      THE COURT:  Good morning.

19      And on behalf of the United States Trustee's

20  Office?

21      MR. ZIPES:  Good morning.  Greg Zipes with the U.S.

22  Trustee's Office.

23      THE COURT:  All right.  Good morning.

24      Anyone else who's here for this case that I have

25  left out?

1        All right.  So, Mr. Cushner, what news?  I know

2   we've had a couple of conversations in October and December

3   about different properties, the three different properties,

4   186 West --

5        MR. CUSHNER:  Correct.

6        THE COURT:  -- 40 Underhill, and 140 Hale.  So

7   where are we?

8        MR. CUSHNER:  Well, Judge, I'd like to start with

9   the objection to the motion to approve the insurance

10  settlement if you don't mind.  I think it would be easier to

11  move in that direction, and I have a few other things that I

12  want to --

13       THE COURT:  All right, that's fine.

14       MR. CUSHNER:  -- express.

15       My concern is the debtor had a catastrophic fire at

16  140 Hale, and the insurance proceeds came in and were taken

17  by the bank.  So the debtor is left with no money to repair

18  her property.

19       I'm not sure if that's a stay violation or not, but

20  it just seems unfair to the debtor at this stage of the game.

21  Basically what the bank did was take the money and paid off

22  the mortgage.

23       THE COURT:  So let me ask am I remembering right

24  that there was a stipulation as to 140 Hale as to what the --

25  what the secured -- the value of the secured claim was?

1          MR. CUSHNER:  I believe you're correct.

2          THE COURT:  All right.  So the reason why I ask is

3    if I've got my ducks in a row, the stipulation said the

4    secured value was 515.

5          MR. CUSHNER:  Correct.

6          THE COURT:  And then the rest of it was unsecured

7    claim.  And then the insurance -- there was a fight about

8    getting an insurance adjuster to work on it that hasn't been

9    resolved.  But the insurance adjuster ultimately got 650 for

10   the dwelling.  It got some additional things for the actual

11   property, but for the -- so the -- for the contents of the

12   property, but the 650 I think was for the property.  Is that

13   right?

14         MR. CUSHNER:  Yes, Your Honor.

15         THE COURT:  All right.  So doing the basic math,

16   doesn't that mean that the secured creditor's entitled to the

17   515, but whatever's left over goes -- goes to the estate and

18   we go from there?

19         MR. CUSHNER:  I was under the impression that she

20   would get her insurance proceeds to pay for the repair of a

21   primary residence.

22         THE COURT:  Well, then somebody needs -- I mean,

23   Mr. Carey I know has said the opposite and somebody --

24   nobody's really teed up what the insurance proceeds -- what

25   the insurance contract provides for.

1    I mean, I understand from Mr. Carey that they're a

2    loss payee, which means they get -- they get paid.  But I

3    mean if they're -- if the value is 515, why not just pay off

4    the mortgage?  I mean, I don't know how they -- I don't know

5    how the debtor ends up without having to pay off that

6    mortgage in the case.

7              MR. CUSHNER:  I understand, Your Honor.

8              THE COURT:  I mean, unless you work out some sort

9    of reinstatement by paying off the arrears with the money.

10   I'm not sure -- I can't -- I can see a circumstance where the

11   debtor might say we're going to handle it this way and we're

12   going to keep the house, we're going to use the money to fix

13   it, but --

14             MR. CUSHNER:  Well, that's what we were planning to

15   do.

16             THE COURT:  But there has to be something more

17   specific about that because I don't know what that means,

18   what the vehicle is for that.  Is it reinstatement?  Is it

19   paying off the arrears?  What is the circumstance that allows

20   the debtor to do that?  What's the theory?  So I need to -- I

21   need more on that because I can't just sort of -- as you

22   know, I sometimes made the speech I don't have a magic equity

23   wand, so I need to know what contract and/or bankruptcy

24   principles.

25             To do that, certainly its statement is one thing,

1  but there may be other things.  I don't know what the arrears

2  are on the mortgage on that.

3          MR. CUSHNER:  Maybe Mr. Carey could clue us in on

4  the arrearage.

5          MR. CAREY:  Your Honor, Michael Carey.  In this

6  situation, the bank was a loss payee, as well as the debtor.

7  Mr. Cushner had the debtor sign the check.  They sent the

8  check to my client.  My client endorsed it, paid off the

9  mortgage, sent $116,641 to Mr. Cushner's office as the

10 difference between the payoff and the amount of the insurance

11 proceeds.  There was an escrow refund of $2,250.84 sent to

12 Mr. Cushner's office.

13         So as the loss payee under the insurance policy, we

14 paid off the loan.  The debtor is, you know, apparently

15 looking to reconstruct the building, incur more debt beyond

16 that which the mortgage incurred and beyond what we were --

17 you know, would ever advance for this, and the debtor

18 basically has to go find new financing to fix the property

19 or, you know, sell the property.

20         But as far as our contract with the insurance, we

21 were the loss payee.  The money, insurance proceeds, were

22 used to pay off the mortgage and that's what we did.

23         MR. CUSHNER:  I understand.

24         THE COURT:  What was the -- what was the payoff

25 amount?

1          MR. CAREY:  I don't have it.  It was the difference

2     between the 650 and the --

3          MR. CUSHNER:  And 116.

4          MR. CAREY:  -- the 116.  So it was 500 and

5     something.  I don't have that actually in front of me.

6          MR. CUSHNER:  534 and change.

7          MR. CAREY:  534 and change.

8          THE COURT:  I don't -- well, how does your client

9     end up with more than the stipulation provided for if the

10    secured value is 515?  I mean, there's a stipulation, right,

11    that says that the -- that it was valued at 515 as the

12    secured portion and that's at -- so I can understand -- I can

13    understand saying that that's the secured value and your

14    argument for that.  I don't know -- the rest of it is

15    unsecured, so I don't know that it -- now again, it's roughly

16    right, but it seems to be the 534, so that leaves about 20 --

17    19,000 to be returned, wouldn't it?

18         MR. CAREY:  No, Your Honor.  We used a payoff

19    number.  I'd have to go back --

20         THE COURT:  Yeah, but the stipulation -- the

21    stipulation changes that, right?  I mean, again, it wasn't a

22    court -- it wasn't a court ruling.  It's a stipulation, but

23    it's so ordered by Judge Drain that says that the -- that

24    the -- everybody stipulates and agrees that the secured

25    portion is 515.  So that's what you get as the secured claim.

1      MR. CAREY:  Your Honor, I'll have to go back, but

2 that was my understanding is that we were going with the

3 stipulated number.  There may have been certain other

4 advances that, you know, may have accrued to make the number

5 higher since that number.

6      THE COURT:  But the stipulation doesn't say 515 as

7 adjusted.  It just -- with other amounts.  It just says it's

8 hereby 515 period and so -- so I think -- I think that that's

9 -- if there -- so I -- because otherwise the -- again, I

10 understand the kind of advances you're maybe talking about,

11 but again the stipulation says what it says and so it's got

12 that 515 number in there so I think that's what -- if that's

13 paid off, the secured claim is paid off based on the

14 agreement of the parties.

15      MR. CAREY:  Your Honor, I have to go back and check

16 that with my client as far as the actual number that we used

17 for the payoff and where that came from based upon the

18 stipulation.

19         So if I can have an opportunity to review that --

20         THE COURT:  Yeah, that --

21         MR. CAREY:  -- and then provide that to --

22         THE COURT:  -- that's fine --

23         MR. CAREY:  -- Mr. Cushner.

24         THE COURT:  But there has to be something that

25 allows that to be paid as a secured claim because otherwise I

think it's unsecured and I don't know what the unsecured

claim pool is or isn't. Maybe your client gets paid that

money anyway, but -- but certainly that's something that we

need to figure out, so -- but we need to figure this out soon

because this is a 2017 case and it's been hanging around

forever.

So the next time, at the next conference, that's

it, we're getting this done. People need to show up with all

the numbers and with a specific idea of what they think is

the right result for these things and if there needs to be

applicable law provided to do that, then you need to do that

before we get together because we're -- it's -- we need to

get the lead out on this case. It's lasted way too long.

So Mr. Carey's going to check on that. And then,

Mr. Cushner, again, if you want to make an argument that

the -- that the lender needs to turn over the money, then you

need to make that argument and file a motion that's teed up

for the next thing in terms of turnover.

But I -- otherwise, I don't know what the arrearage

is, what the loan says, and all that in terms of the ability

to do that.

MR. CUSHNER: To be honest, Judge, I think the

Court has it right. I think it's just a matter of that

discrepancy between the 515 and the -- and what was taken.

So I'm not going to make that argument. I'm just going to

1  express that to the debtor what she needs to do with respect

2  to her primary residence.

3          THE COURT:  All right.  All right, so Mr. Carey,

4  maybe what we can do is when we set a date, we'll work in

5  enough time so that you have two -- a week or two before we

6  get together you can share your client's take on it with

7  Mr. Cushner and then everybody will be in a position to

8  figure it out before we -- you know, at the next hearing

9  because I think that would be important to get this done.

10          Does that make sense to you, Mr. Carey?

11          MR. CAREY:  Yes, it does, Your Honor.

12          MR. CUSHNER:  And I'm fine with that too, Judge.

13          THE COURT:  All right, great.

14          MR. CUSHNER:  If I could move onto the second

15  issue.

16          In December of '22 at Docket 154, there was an

17  application to approve a Lauren Gruppuso as real estate sales

18  person nunc pro tunc.  We had submitted an order, but we

19  never got the order back on that.

20          THE COURT:  Which -- for which property?

21          MR. CUSHNER:  I think that was for both 186 West

22  Street and 40 Underhill Place.

23          THE COURT:  I think there was an objection to that,

24  right?

25          MR. CAREY:  I don't have an objection to that.

1          THE COURT:  All right.  So give me a second.

2          MR. CUSHNER:  And I could resubmit an order if

3     Judge --

4          THE COURT:  No, no, that's okay.  I just want to

5     make sure I'm -- anybody wish to be heard on that

6     application?

7          MR. ZIPES:  Your Honor, Greg Zipes with the U.S.

8     Trustee's Office.  I am playing catch-up a little bit with

9     this case.  This was assigned to a colleague of mine who

10    passed away, and I would just note that if it was filed some

11    years ago, if Mr. Cushner submitted the order that  it would

12    -- that would be helpful.  It is Debtor's (indiscernible.)

13         THE COURT:  All right.  Yeah, there is no objection

14    on the docket.  So here's -- I understand Mr. Zipes is

15    playing catch-up and there's a lot of history here.  So,

16    Mr. Cushner, if you'd be kind enough to send a copy of the

17    proposed order to Mr. Zipes and then forward another version

18    to cham –

19         MR. CUSHNER:  Chambers.

20         THE COURT:  I don't -- I don't think I have it.  I

21    was going through my inbox the other day.  So which isn't

22    necessarily -- I'm not saying I shouldn't have it, but I'm

23    saying I --

24         MR. CUSHNER:  No, I have no problem re-sending it,

25    Judge.  I think that's reasonable and I'll send it to

1    Mr. Zipes as well.

2              THE COURT:  All right.  And let me ask, just so I

3    know to look out for it, what the application is on behalf

4    of?

5              MR. CUSHNER:  It's an application to employ a real

6    estate broker to sell property.

7              THE COURT:  Okay, all right.  And what's the name

8    of the broker?

9              MR. CUSHNER:  The name of the broker is Lauren

10   Gruppuso Real Estate.

11             THE COURT:  Okay.  All right, thank you.  I'll keep

12   track of that.  All right.

13             MR. CUSHNER:  Okay.

14             THE COURT:  So moving right along.

15             MR. CUSHNER:  Moving along, a similar scenario at

16   Docket 168 was our application to employ Russell Lusthaus as

17   real estate attorney for the debtor, which we didn't have an

18   order on.  And I could do the same thing, resubmit orders to

19   Chambers and Mr. Zipes.

20             THE COURT:  All right.  Anybody wish to be heard on

21   that application?

22             All right.  If you'd submit that order as well.

23             MR. CUSHNER: I'll do it today, Judge.  Thirdly, at

24   Docket 187, there was an order to -- it was a motion to void

25   a junior mortgage lien held by RRA CA Opportunity Trust I,

1  which had no opposition.  And, again, no order.

2          THE COURT:  All right.  Yeah, I think that --

3          MR. CUSHNER:  So I'll do the same thing.

4          THE COURT:  Yeah, well that had been carried to

5  today.  So anyone wish to be heard on that motion?

6          All right.  That motion -- give me one second to

7  just find that because there's quite a few things here.  I

8  just want to lay eyes on it because I looked at it.  Give me

9  a second.

10         And this is for 186 West Street?

11         MR. CUSHNER:  Street.

12         THE COURT:  All right.  That motion is granted for

13 the reasons set forth in the motion, and submit that order,

14 and that's addressed.

15         MR. CUSHNER:  Thank you.

16         I want the Court to know that we have short sale

17 approval from the banks on both 40 Underhill and 186 West

18 Street, and we're moving forward with that.

19         The debtor -- somebody wanted to say something?

20 I'm sorry.

21         THE COURT:  Well, go ahead.  So 186, there was a

22 sale motion that was previously denied and the stay was

23 lifted.  So I'm -- so for that, who's the creditor on that?

24 Is that SN Servicing?

25         MR. CUSHNER:  I believe so.

1          THE COURT:  All right.  So -- yes, go ahead.

2          MR. CAREY:  I'm only here dealing with 140 Hale

3    Avenue on behalf of SN Servicing.

4          THE COURT:  Okay.  Ms. Felix, are you here for the

5    186 property?

6          MS. FELIX:  No.  I'm on Underhill property, the

7    Bank of New York Mellon.  I don't have any notification of a

8    short sale approval though.  We have a motion for relief

9    currently on the calendar for today.

10          THE COURT:  All right.  So let's stick with 186 for

11    a second.

12          So there was -- so there was a motion for a sale

13    that was denied, and that was in December, I think.  So I

14    didn't -- and then there's a motion for a sale that's teed up

15    for today.  What docket number is that, Mr. Cushner?

16          MR. CUSHNER:  That would be Docket 204.  And

17    Exhibit 6 was the short sale approval letter.

18          THE COURT:  Okay.  All right.  So and is there --

19    are there any other liens on the property other than that one

20    lender?

21          MR. CUSHNER:  No.

22          THE COURT:  All right.  So in light of that, I'm

23    happy to approve the motion for a short sale.  And hold on

24    one minute.

25          Oh, the short sale motion is that scheduled for

1  next Tuesday?  I think my courtroom deputy had a question

2  about the two different hearing dates.  But that one's –

3         MR. CUSHNER:  Yes, we are on for next Tuesday.

4         THE COURT:  Yeah, so I take that back.  We'll put

5  that on for the date it's on.

6         MR. CUSHNER:  Not a problem, Judge.

7         THE COURT:  All right.  So then we're going to

8  40 Underhill.  Is that correct?

9         MR. CUSHNER:  Yes.

10         THE COURT:  All right.  So what's the status on

11  that?

12         MR. CUSHNER:  I'm double checking right now.  I

13  can't seem to put my hands on it, but I'm 99 percent sure I

14  have a short sale approval on that one as well, and I believe

15  that was with Mr. Kevin Toole.

16         MS. FELIX:  Yes, I'm appearing for Kevin.

17         MR. CUSHNER:  And I discussed this with Mr. Toole

18  and gave him a copy of the short sale approval letter.

19         MS. FELIX:  When was that provided to him?

20         MR. CUSHNER:  Two weeks ago.

21         THE COURT:  So if Ms. Felix could find it, great.

22  If not, I suppose we could carry that to the 12th and address

23  that then.  Does that make sense?

24         MR. CUSHNER:  That's fine with me, Judge.

25         MS. FELIX:  Yeah, I don't have anything in his

1  emails to me or anything in the file for a short sale

2  approval on this.

3          THE COURT:  All right.  So let's do this.  We'll

4  have the two short sales scheduled for the 12th, March 12th,

5  and so I think we've dealt with a number of real estate

6  broker applications.  We've teed up the insurance proceed

7  situation.

8          And with that, Mr. Cushner, is there anything else

9  on the list that you --

10         MR. CUSHNER:  Yes.  I have the debtor was behind on

11 her operating reports for December, January, and February.  I

12 expect them by the end of the week.  I'm not sure if she's

13 caught up with her trustee payments, but I believe that she

14 is up to that point.

15         So that will be coming -- the other thing is

16 Mr. Zipes and I had a conversation, an extensive conversation

17 about converting this case to a Chapter 13 because she now

18 fits under the new Chapter 13 debt guidelines.

19         THE COURT:  Is that something the debtor wants to

20 do?

21         MR. CUSHNER:  Yes.

22         THE COURT:  All right.

23         MR. CUSHNER:  I don't see -- I think Mr. Zipes will

24 agree with me, we both discussed that it's probably better

25 served in a 13 than an 11 at this point.

1          THE COURT:  Mr. Zipes, your thoughts?

2          MR. ZIPES:  Yes.  I believe that given the secured

3    and unsecured status of the debts that this debtor would

4    qualify, and we'll review that with Mr. Cushner, I will note

5    that the monthly operating reports that have been filed, at

6    least my version of them, there might have been an error with

7    the filing and I'll ask that Mr. Cushner review that.  The

8    first page of the monthly operating report (indiscernible)

9    cover sheet that doesn't seem to apply to the monthly

10   operating reports.

11         THE COURT:  All right, so --

12         MR. CUSHNER:  I'll double check that.

13         THE COURT:  -- is the notion to go ahead with the

14   two short sales on the 12th --

15         MR. CUSHNER:  Yes.

16         THE COURT:  -- and then file a motion to convert as

17   the next event after that?

18         MR. CUSHNER:  Yes.  I was hoping to get the orders

19   done and then convert.

20         THE COURT:  All right.  So I would say file a

21   motion to convert and we'll get you a date.  What I would say

22   is just file adjournment notice on the one we're -- although

23   Ms. Felix is here today, so she knows.

24         So is there anybody that has an interest in that

25   property other than Ms. Felix's client?

1              MR. CUSHNER:  No.

2              THE COURT:  Okay, all right.  So then we don't need

3    to do that.

4              All right.  So I will look for two real estate

5    broker orders.  I'll look for an order on the voiding the

6    junior mortgage lien on 186, and we will tee up the two short

7    sales next -- on the 12th, and there'll be a motion to

8    convert that's filed, and we can -- we can pick a date for

9    that now.  We can pick a date on the 12th, or you can talk to

10   Ms. Ebanks.

11             What's your preference, Mr. Cushner?

12             MR. CUSHNER:  We can pick a date.

13             THE CLERK:  Your Honor, we'll also need to make

14   sure to carry the motion for relief with the motion --

15             THE COURT:  I'm sorry.  Yes, you're entirely

16   correct.  Thank you.

17             All right.  So today is March 5th.  Do you want --

18   do you want to do that beginning of April, Mr. Cushner?

19             MR. CUSHNER:  Earliest date would be best.

20             THE COURT:  All right.  I can't give you the last

21   week in March and I think you need enough time for notice, so

22   I would say why don't we give you April 2nd?

23             MR. CUSHNER:  April 2nd sounds good, Judge.

24             THE COURT:  All right.

25             MR. ZIPES:  Your Honor, I'm sorry.  I have one

1   final question for Mr. Cushner in light of the funds that

2   were transferred to him in surplus insurance.  Is that being

3   held in escrow pending order of the Court or is that -- it

4   doesn't appear to be in the debtor's bank account.

5         Is that -- is that being held in some form?

6         MR. CUSHNER:  No.  That money was transferred to

7   the debtor.

8         THE COURT:  Yeah, I think that needs to go to the

9   estate, right, in the DIP account?

10        MR. CUSHNER:  She put it in her DIP account.  I'm

11  pretty sure it's in the DIP account.  I -- those checks were

12  sent -- I believe they were sent directly payable to her, and

13  I -- she was advised to put it in her DIP account.  I'll

14  double check on that.

15        MR. ZIPES:  So, Your Honor, I would just say for

16  the monthly operating report that was filed, it doesn't have

17  the proper cover sheet, at least my version and, again, I

18  think my version is the right one, but it does have bank

19  statements attached to it and those don't seem to reflect

20  that.

21        I would just caution that in a situation like this

22  where an individual debtor is being given large -- a large

23  sum of cash that there -- there's a history of spending by

24  this debtor, and it should not -- there shouldn't be any --

25        THE COURT:  Yeah, no, well she's the loss payee so

1    I understand it has to go to her.  But at the debtor it has

2    to then go into the DIP account and be reflected in the, the

3    monthly operating report.

4           So, Mr. Cushner, I'd ask you to look into that so

5    that --

6           MR. CUSHNER:  I will.

7           May I -- may I ask Mr. Zipes which operating,

8    monthly operating report he's referring to?

9           MR. ZIPES:  I'm looking at the last one that was

10   filed on the docket, and that was apparently on January 31st,

11   2024, unless I'm missing something, and that's Docket Number

12   200.

13          And the first page of that has some document on it

14   that really isn't a monthly operating report.  But the

15   second -- the attachment is a TD Bank statement for November.

16   So we're only talking about November there.  I don't --

17          MR. CUSHNER:  It's November, okay.  It's November.

18   I'll have her redo it.  I'll have her redo November correctly

19   along with January, February -- December, January and

20   February.

21          THE COURT:  Yeah.  I'm not sure when the money

22   actually came into the debtor's possession either.  I know

23   we've been having these discussions.  So I trust you'll

24   figure it out so that that box can be checked on the 12th.

25          We're going to send it to --

1        MR. CUSHNER:  Very well.

2        THE COURT:  -- to Chapter 13 at this point.

3   Obviously, it goes to another Judge, so I don't want to -- I

4   want to send -- when you send a seven-year-old case to

5   another Judge as a Chapter 13, the very least we could do is

6   make sure it's in good shape and all -- everything's

7   accounted for.  So let's get that figured out by the 12th,

8   and then we'll deal with those other two motions and then

9   April 2nd is the motion to convert.  All right.

10       MR. CAREY:  Your Honor, Michael Carey.  With

11  respect to the insurance proceeds, I did locate a payoff from

12  August that we had been using.  I will update it, but that

13  was in the amount of $506,919.  So that was below the

14  $515,000 number.  But I'll supplement that, the record with

15  Mr. Cushner to clarify the payments that were made.

16       THE COURT:  I appreciate that, Mr. Carey, and so

17  here's what I'll do is you all will have a conversation about

18  the numbers and if there's anything to discuss, we can

19  discuss it on the 12th.  But, again, you are close to it and

20  it sounds like your client was using the 515 number as a base

21  for whatever payments were made.

22        But, again, the question is sort of matter of

23  how -- the details of how it played out.  So thank you.  If

24  you could provide that information to Mr. Cushner this week,

25  end of the week, that would be great and then hopefully

1  we'll -- if we need to sort through anything we can do it on

2  the 12th.

3          MR. CAREY:  Thank you, Your Honor.

4          THE COURT:  Thank you.

5          MR. CUSHNER:  Thank you, Judge.

6          THE COURT:  All right.  Thank you very much.

7          MR. CUSHNER:  Thank you, everybody.

8          THE COURT:  See on you on the 12th.

9          MR. CUSHNER:  Very well.

10         (Whereupon proceeding was adjourned.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

R U L I N G S

CASE MANAGEMENT STATUS CONFERENCE

DOC. #160 (Presentment With Objection) Motion to Approve
Insurance Settlement

Doc. #162 (Presentment With Objection) Objection To Motion To
Approve Insurance Settlement Filed on Behalf of SN Servicing
Corp.

Doc. #176 Motion to Sell Property Free and Clear of Liens
Under Section 363(f) For the Property Located at 40 Underhill
Place, West Harrison, New York 10604

Doc. #187 Motion to Void Lien/Motion to Void Junior Mortgage
Lien Held by RRA CP Opportunity Trust I Against the Debtor's
Investment Property Located At 186 W. Street, White Plains,
NY 10605 - GRANTED, PG. 15

Doc. #201 Motion for Relief From the Automatic Stay Re: The
Bank of New York Mellon: 40 Underhill Place, West Harrison,
NY 10604 - GRANTED, PG. 15

Doc. #204 Motion for Short Sale - GRANTED, PG. 17

1

2                    C E R T I F I C A T I O N

3

4            I, Nancy B. Gardelli of Acorn Transcripts, LLC,

5    court-approved transcriptionist, hereby certify that the

6    foregoing transcript is a correct transcript, to the best of

7    my ability, from the official electronic sound recording of

8    the proceedings in the above-entitled matter.

9

10   ACORN TRANSCRIPTS, LLC

11

12

13

14   /s/ *Nancy B. Gardelli*        Dated: April 21, 2025

15   Nancy B. Gardelli

16   Federally Approved Transcriptionist

17

18

19

20

21

22

23

24

25